**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Case No. 26-01839-5-PWM** |
| **FUTURE MEAT TECHNOLOGIES** | ) | |
| **LTD.** | ) | |
| | ) | **Chapter 15** |
| Debtor. | ) | |

<u>**DECLARATION OF YOEL FREILICH IN SUPPORT OF MOTION OF THE FOREIGN REPRESENTATIVE FOR CHAPTER 15 RECOGNITION AND FINAL RELIEF**</u>

I, Yoel Freilich, hereby declare, pursuant to 11 U.S.C. § 1746, as follows:

1.     I am over the age of eighteen (18), am mentally competent, have personal knowledge of the facts in this matter except where stated as based upon information and belief, and if called upon to testify, I could and would do so.

2.     I am an attorney at the law firm Gissin & Co. Advocates in Tel Aviv, Israel and specialize in corporate litigation, restructuring, and insolvency.

3.     I am the Trustee of Future Meat Technologies Ltd. ("Future Meat" or the "Company") in its insolvency and restructuring proceeding commenced pursuant to Israel's Insolvency and Economic Rehabilitation Law, 2018 and Insolvency and Economic Rehabilitations Regulations that is currently pending in the Lod District Court in Tel Aviv, Israel (the "Israeli Proceeding"). I have been involved in the restructuring efforts of the Company to date in my role as Trustee.

4.     I submit this declaration ("Declaration") in support of the *Motion of the Foreign Representative for Chapter 15 Recognition and Final Relief.* Except as otherwise indicated herein, all of the facts set forth in this Declaration are based on my personal knowledge, my review of the books and records of the Company, information provided to me by professionals or employees of

the Company, and my opinions are based on my experience with and knowledge of the Company's operations, business, and financial condition. If called upon to testify, I could and would testify to the facts set forth herein on that basis.

5.    On January 5, 2026, Future Meat Technologies Ltd. commenced the Israeli Proceeding. On that date, I was appointed by the Israeli Court as temporary trustee of the Company. A certified copy of the Israeli Court's Order commencing the Israeli Proceeding is attached to the Motion as Exhibit A.

6.    On January 19, 2026, the Israeli Court entered an order establishing my powers and duties as trustee. A certified copy of that Order is attached to the Motion as Exhibit B.

7.    Among other things, my duties as trustee include preservation of the Company's assets, management of the Company's affairs during the Israeli Proceeding, maximizing the value of the Company's assets, exercising the Company's control rights in its Subsidiary[1], engaging in discussions with the receiver appointed over the Subsidiary's assets, and for such purpose application to the court in the United States as the Company's authorized representative.

8.    Future Meat Technologies Ltd. is an Israeli food-tech company based in Rehvot, Israel, specializing in the development of cultivated meat technology.

9.    Future Meat has developed an innovative technological platform to produce cultivated meat in a cost-efficient manner through proprietary processes involving cell cultivation, growth media optimization, and scalable production systems. These developments were carried out primarily in the Company's R&D facilities in Rehovot, Israel, by a multidisciplinary team of scientists and engineers.

10.    As part of its many technological developments, the Company successfully

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Motion of the Foreign Representative for Chapter 15 Recognition and Final Relief.*

established a pilot production facility in Israel, which conducted initial research and development of technologies and intellectual property related to the transformation of cultivated animal cells into consumable meat products.

11. The Company owns and controls a portfolio of intellectual property, including patents (some solely owned and some licensed or jointly held), as well as substantial proprietary know-how, production methodologies, documented processes, and quality control systems. This intellectual property constitutes the core of the Company's business and is essential for any continued operation, restructuring, or sale of the business as a going concern.

12. Additionally, the Company has developed cultivated cell lines and a cell bank, which are unique and highly sensitive biological assets. These assets are irreplaceable and form the foundation of the Company's technology. They are in multiple locations, including backup storage arrangements located in the United States. The preservation and protection of these biological materials is critical, and any damage or loss would result in irreversible harm to the Company's enterprise value.

13. Following its research and development phase, the Company expanded its operations into the United States. The Company established a wholly owned subsidiary, Future Meat Technologies, Inc. d/b/a Believer Meats ("Believer" or the "Subsidiary"), a Delaware corporation which conducts business in North Carolina and operates its primary production facility in Wilson, NC (the "Believer Facility").

14. The Company's intellectual property, as described above, is vested in the Believer Facility. The Subsidiary was established to bring the technology developed by the Company into an industrial-scale operation while relying on and using the Company's intellectual property, professional know-how, research and development infrastructure, scientific capabilities and the

very planning of the plant and its manufacturing procedure, that was done by the Company.

15. The relationship between the Company and the Subsidiary was marked by an exceptionally close operational, business, and technological integration. The Company financed the construction of the Believer Facility, and, upon information and belief, approximately $154 million dollars was invested by the Company in the construction of the plant structure alone, excluding production equipment. This facility, together with its associated equipment, contracts, and operational framework, constitutes a substantial portion of the Company's physical and commercial footprint in the United States.

16. The Company holds all the shares of the Subsidiary and made available to the Subsidiary the technological and proprietary infrastructure required for the establishment and operation of the industrial production platform. In addition, the corporate governance of the Company and the Subsidiary consisted of the same individuals; after the Subsidiary was established, employees of the Company transitioned to the Subsidiary.

17. The Company has experienced a severe and prolonged liquidity crisis, which has progressively worsened due to a combination of operational and regulatory issues, financing issues, and legal factors.

18. Among other things, the Company contended with significant cost overruns and delays in the construction project of the Believer Facility, prolonged delays in obtaining the regulatory approvals required in the United States, increasing difficulty in raising investment and financing in the food-tech market generally (and for an Israeli company in particular) combined with the continuing effects of the war in Israel, including the mobilization of key employees for reserve duty, operational disruptions, and supply chain delays.

19. Additionally, the final triggering event was the legal action commenced in the

United States in relation to the Subsidiary and the plant constructed there. On December 23, 2025, an action was commenced against Believer in the Superior Court of Wilson County, North Carolina, Case No. 25CV005578-970 (the "Receivership Action"), by Gray Construction, the contractor that built the Facility, seeking appointment of a limited receiver over Believer's assets alleging indebtedness in the tens of millions of dollars.

20.     The Receivership dramatically impaired the Company's ability to raise additional financing, preserve the value of the U.S. operations, and pursue a comprehensive business solution. In these circumstances, and after the Company had exhausted its efforts to raise financing, negotiate with investors and suppliers, and implement significant cost-reduction measures, the Company had no alternative but to apply to the Israeli court for the commencement of the Foreign Proceeding.

21.     Together, these factors materially impaired the Company's ability to continue funding its ongoing operations and to advance toward commercial-scale production.

22.     In the Israeli court's decision dated February 2, 2026, it was determined that the company would be placed under temporary operation, and accordingly, the proceeding is still at an early stage.

23.     Pursuant to the court's directions and the provisions of Israeli law, a period of six months, commencing in January 2026, was granted for the filing of proofs of debt. Accordingly, most proofs of debt have not yet been filed at this stage, and no final or complete schedule of claims has yet been formulated. Based on the Foreign Debtor's declaration in the commencement of the insolvency proceedings, as of the date the Israeli Proceeding was commenced, the Company's assets mostly consist of intellectual property alongside equity in the subsidiary, against liabilities that total approximately $12,000,000 to creditors and approximately 225,000,000 in

capital notes (all are subject to proofs of debts that have not yet been filed).

24.     By filing a chapter 15 petition in the United States Bankruptcy Court for the Eastern District of North Carolina (the "Court"), I, as Foreign Representative, now seek the assistance of this Court to, among other things, recognize the Israeli Proceeding as the foreign main proceeding, to obtain the benefits of the automatic stay to protect the Company's assets, including its intellectual property and know-how as well as its cell bank and biological assets located in the United States, obtain potential relief in the Bankruptcy Court to exercise my investigatory powers as Trustee, and promote coordinated cross-border insolvency protection for the Company, all of which are critical to the Foreign Debtor's reorganization efforts.

I hereby declare under penalty of perjury that the foregoing statements made by me are true and correct to the best of my knowledge, information, and belief.

Dated: April 23, 2026

**[SIGNATURE ON FOLLOWING PAGE]**

Serial No. 368

Form No. 1

מס' סידורי 638

טופס מס' 1

## AUTHENTICATION OF SIGNATURE

I, the undersigned, Ram Ephrati Notary holding license no. 2063660 hereby certify that on April 21, 2026 appeared before me at my offices located at 22 Maskit St. Herzliya, Israel

Mr. **YOEL FRIELICH**

☐ who is known to me personally

☒ whose identity has been proven to me by an Israeli passport number 32730795 issued on August 09, 2018.

And I am convinced that the person standing before me understood fully the significance of the action and voluntarily signed the attached document marked with the letter A'.

In witness whereof I hereby authenticate the signature of Mr. **YOEL FRIELICH** by my own signature and seal this day April 21, 2026.

Notary fee 232 NIS

## אימות חתימה

אני החתום מטה רם אפרתי, נוטריון בעל רישיון מספר 2063660 מאשר כי ביום 21/04/2026 ניצב לפניי במשרדי שברחוב משכית 22, הרצליה, ישראל

מר **יואל פרייליך**

☐ המוכר לי באופן אישי

☒ שזהותו הוכחה לי על פי דרכון ישראלי מספר 32730795 שהונפק ביום 09/08/2018.

ושוכנעתי כי הניצב לפניי הבין הבנה מלאה את משמעות הפעולה וחתם מרצונו החופשי על המסמך המצורף והמסומן באות א'

לראיה אני מאמת את חתימתו של מר **יואל פרייליך** בחתימת ידי ובחותמי, היום 21/04/2026.

שכר נוטריון 232 שקלים חדשים.



חותם הנוטריון
Notary's Seal



חתימה
Signature



# APOSTILLE
### (Convention de la Haye du 5 Octobre 1961)

| | |
|---|---|
| **1. STATE OF ISRAEL** | **1. מדינת ישראל** |
| This public document | מסמך ציבורי זה |
| 2. Has been signed by | 2. נחתם בידי |
| Advocate_____ | עו"ד _____ |
| 3. Acting in capacity of Notary | 3. המכהן בתור נוטריון. |
| 4. Bears the seal/stamp of | 4. נושא את החותם/החותמת |
| the above Notary | של הנוטריון הנ"ל |
| **Certified** | **אושר** |
| 5. At the Magistrates Court of Herzliya | 5. בבית משפט השלום בהרצליה |
| 6. Date 23 -04- 2026 | 6. ביום 23 -04- 2026 |
| 7. By an official appointed by | 7. על ידי מי שמונה בידי שר |
| Minister of Justice under the | המשפטים לפי חוק הנוטריונים, |
| Notaries Law, 1976. | התשל"ו - 1976 |
| 8. Serial number 659792/7 | 8. מס' סידורי 659792/7 |
| 9. Seal/Stamp _____ | 9. החותם / החותמת _____ |
| 10. Signature Belo | 10. חתימה _____ |

רם אפרתי
Ram Ephrati

